**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          lsironski@bursor.com
          jwilner@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail:  greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNE EVANS, individually and on behalf of all others similarly situated,<br><br>                                         Plaintiff,<br>    v.<br><br>SLEEP NUMBER CORPORATION,<br><br>                                      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff June Evans ("Plaintiff") brings this action individually and on behalf of all others similarly situated against Sleep Number Corporation ("Defendant" or "Sleep Number").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      The home furnishing and mattress market is booming.  The revenue generated in this market in the United States is expected to amount to $252.70 billion in 2024.

2.      Defendant seeks to carve out its own share of this hypercompetitive market by offering perpetual "sales" and discounted prices through its brick-and-mortar stores and online e-commerce store.

3.      It is no secret that consumers actively seek out bargains and discounted items when making purchasing decisions.  Retailers, including Defendant, are well aware of consumers' susceptibility to such perceived bargains.  Products perceived by consumers to be discounted, however, are not always actual bargains.  In an effort to give off the appearance of a bargain, Defendant intentionally misleads consumers as to the quality and value of its mattresses available in its brick-and-mortar and online stores (the "Products" or the "Mattresses") through its deceptive sales tactics.

4.      Up until about September 2024, whenever consumers visited Defendant's brick-and-mortar stores and e-commerce website they were shown purported sale prices on Defendant's Mattresses.  *See* Figure 1 and Figure 2, reproduced on following pages.



**Figure 1**



**Figure 2**

5.      In reality, Defendant's purported "sales" are anything but.  Defendant frequently sold its Products below the advertised strike-through price for periods of 90-days or more.  This may have changed after Defendant received Plaintiff's counsel's notice and demand letter.  While

Defendant's online store now reflects some or all of the Products advertised at full price, the Products had not been advertised at their official strike-through price for at least 90 days in store and online, and likely for much longer.

6. From August 2023 and likely earlier, until about September 2024, Defendant's online store reflected Defendant's deceptive pricing practices for its Products. *See* Figures 3-6, reproduced below.



**Figure 3**



**Figure 4**

**Figure 5**



**Figure 6**

7.      Defendant's deceptive pricing practices were confirmed through the use of The Wayback Machine, a digital archive of the internet created by the Internet Archive, a non-profit organization.  After Defendant received Plaintiff's demand letter, some of the Products were suddenly advertised online at their full retail price.

8.      It is well established that false "reference" pricing violates state and federal law. Nonetheless, Defendant employed inflated, fictitious reference prices for the sole purpose of increasing its sales.  Defendant engages in this deceptive practice to deceive consumers, including Plaintiff, into believing they are receiving a bargain on their in-store and online purchases and thus to induce them into making a purchase they otherwise would not have made.

9.      As a direct and proximate result of Defendant's false and misleading sales practices, Plaintiff and members of the Class, as defined herein, were induced into purchasing the Products

under the false premise that they were of a higher grade, quality, or value than they actually were.

10.     Plaintiff seeks relief in this action individually, and on behalf of all purchasers of the Products for violations of (i) California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*; (ii) California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*; (iii) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; (iv) fraud; and (v) unjust enrichment.  Through this action, Plaintiff seeks to enjoin Defendant from its false and deceptive sales practices, and to obtain actual and statutory damages, restitution, injunctive relief, and reasonable attorneys' costs and fees.

## **PARTIES**

11.     Plaintiff June Evans is an individual consumer who, at all times material hereto, was and continues to be a citizen of California and a resident of Bakersfield, California and intends to stay there.

12.     Ms. Evans purchased one of Defendant's Products, a full-size C2 360 Smart Bed mattress, from Defendant's Bakersfield, California store.  Ms. Evans purchased the Product on February 25, 2023, for a purported sale price of $719.20.  The Product Ms. Evans purchased displayed an original, strike-through price of $899.00, representing that Plaintiff would have a "Total Savings [of] $179.80."  Before purchasing the Product, Ms. Evans reviewed information about the Product, including Defendant's representations that the Product was being offered at a discounted sale price, including but not limited to the Product having a "new lower price," representing that consumers enjoyed "X% off," and displaying a strike-through reference price. When purchasing the Product, Ms. Evans also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by Defendant that the Product was ordinarily offered at a higher price of $899.00.

13.     Ms. Evans relied on Defendant's false, misleading, and deceptive representations and warranties about the Product in making her decision to purchase the Product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product, or would not have paid as much for the Product, had she known Defendant's representations were not true.  Defendant's representations about its Mattresses are

false and misleading because they induce consumers into believing that they are purchasing a Product of a higher value and quality than it actually is.  At the time of Plaintiff's purchase, Defendant's Products had not been advertised at their official strike-through price for at least 90 days, but likely for much longer.

14.     Had Ms. Evans known the truth—that the representations she relied upon in making her purchase were false, misleading, and deceptive—she would not have purchased the Product or would have paid less for it.  Ms. Evans did not receive the benefit of her bargain, because Defendant's Product was not of the represented quality and value.  Ms. Evans understood that her purchase involved a direct transaction between herself and Defendant, because the Product she purchased came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.

15.     Defendant Sleep Number Corporation is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.  Defendant manufactures, markets, and advertises and distributes its Mattresses throughout the United States, including California.  Defendant manufactured, marketed, and sold the Products during the relevant Class Period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Products was primarily or exclusively carried out by Defendant.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

17.     This Court has personal jurisdiction over the parties because Plaintiff resides in California, is a citizen of California, and submits to the jurisdiction of the Court, and because Defendant has, at all times relevant hereto, systemically and continually conducted, and continues to conduct, business in this State.  Defendant therefore has sufficient minimum contacts with this state, including within this District, and/or intentionally availed itself of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of its Products to

residents within this District and throughout this State.  Additionally, Defendant marketed and sold its Products to Plaintiff in this District.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant regularly does business in this District, and a substantial portion of the events giving rise to the cause of action occurred in this District.  Plaintiff purchased the Product and suffered her primary injury in this District.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

19.    Defendant manufactures, markets, sells, and distributes its Products throughout the United States, including California, through its brick-and-mortar stores and online e-commerce store.

### *<u>State And Federal Pricing Guidelines</u>*

20.    California law provides clear guidelines as to permissible and unlawful sales tactics:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

21.    Additionally, California law expressly prohibits making false or misleading statements of fact "concerning reasons for, existence of, or amounts of price reductions."  *See* Cal. Civ. Code § 1770(a)(13).

22.    The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics.  *See* 16 C.F.R. § 233.

23.    The FTC provides the following guidance on former price comparisons:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a

price comparison.  Where the former price is genuine, the bargain being advertised is a true one. **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

24.     The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**."  16 CFR § 233.1(b) (emphasis added).

25.     The FTC also provides retailers with guidance as to retail price comparison:

Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.**  Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

26.     Essentially, federal and state law provides that sales practices should be offered in good-faith and accurately reflect the price at which comparable products are sold in the market.

### ***Defendant's Deceptive Sales Practices***

27.     Defendant primarily sells its Products through its brick-and-mortar stores and its e-commerce website.

28.     In an effort to increase sales, Defendant engages in a pervasive in-store and online marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted sale price.  Defendant is aware that consumers typically lack material

information about a product and often rely on information from sellers when making purchasing decisions, especially when a product's quality or value is difficult to discern.[1]

29.     Defendant has multiple methods of deceiving consumers into believing that they are receiving a bargain on the Products they purchase through Defendant's brick-and-mortar stores and online store.

30.     First, Defendant utilizes a fictitious strike-through reference price accompanied by a purported discount amount.  Next to the fictitious reference price is a lower purported sale price. Defendant further warrants to consumers that they benefit from "X% off" through their purchase and that such products are on sale.

31.     In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased.

32.     Defendant did not sell its Products at the advertised strike-through price and had not done so for at least 90 days when Plaintiff made her purchase, but it was likely doing so for much longer.

33.     Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and made for the purpose of inducing consumers like Plaintiff to make their purchase.

34.     Plaintiff and all other consumers who purchased the "discounted" Mattresses were harmed as a direct and proximate result of Defendant's acts and omissions.

35.     Defendant commits the same unfair and deceptive sales practices for all of its Products.  *See* Figures 7-9, reproduced below.

---

[1] *Information and Consumer Behavior*, Phillip Nelson, JOURNAL OF POLITICAL ECONOMY 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").



**Figure 7**





**Figure 8**



**Figure 9**

36.     As a result of Defendant's misconduct, consumers are fooled into believing they have the opportunity to purchase a Mattress at a limited-time discount price, thereby inducing them to make the transaction.  Given that Defendant almost never actually sells its Products at their full retail prices, Plaintiff and the members of the Class are not receiving the bargain or value Defendant would have them believe they are.

## **CLASS ALLEGATIONS**

37.     Plaintiff brings this matter on behalf of herself and all those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated its deceptive sales practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

38.     The Class is defined as all consumers who purchased the Products during the applicable statute of limitations period (the "Class Period) in California (the "Class").

39.     The Class is properly brought and should be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

40.     ***Numerosity***: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

41.     ***Commonality***: The questions of law and fact common to the Class Members, which predominate over any questions which may affect individual Class Members include, but are not limited to:

(a)     Whether Defendant is responsible for the conduct alleged herein, which was uniformly directed at all consumers who purchased Defendant's Products;

(b)     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

(c)     Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive a reasonable consumer and/or the public;

(d)     Whether Plaintiff and the Class are entitled to injunctive relief; and

(e)     Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

42.     ***Typicality***: Plaintiff is a member of the Class she seeks to represent.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct, and purchased the Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

43.     ***Adequacy***: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class members she seeks to represent; her consumer fraud claims are common to all other members of the Class, and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and she intends to vigorously prosecute this action.  Plaintiff has no interests that conflict with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.  Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

44.     ***Superiority***: Further, a class action is superior to any other available method for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable.  Additionally, the expense and burden of individual litigation would make it difficult or impossible for the individual Class members to redress the wrongs done to them, especially given the costs and risks of litigation as compared to the benefits that may be attained.  Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents fewer management difficulties and provides the benefit of single adjudication and comprehensive supervision by a single forum.

45.     Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## <u>COUNT I</u>
### Violation of California's Consumers Legal Remedies Act ("CLRA")
CAL. CIV. CODE §§ 1750, *et seq.*

46.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

47.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

48.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

49.     Plaintiff and members of the Class are consumers who purchased Defendant's Products for personal, family, or household purposes.  Accordingly, Plaintiff and members of the Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

50.     At all relevant times, Defendant's Products constituted "goods," as that term is defined in Cal. Civ. Code § 1761 (a).

51.     At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ. Code § 1761(e).

52.     At all relevant times, Plaintiff's purchase of Defendant's Product, and the purchases of other Class members, constituted "transactions," as that term is defined in Cal. Civ. Code § 1761 (e).

53.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

54.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Products to Plaintiff and the Class.  Defendant's practices, acts, policies, and course of conduct violated the CLRA §§ 1750 *et seq.*, as described above.

55.     Defendant advertised goods or services with intent not to sell them as advertised in violation of California Civil Code § 1770(a)(9).

56.     Defendant made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions, in violation of California Civil Code § 1770(a)(13).

57.     Defendant violated California Civil Code §§ 1770(a)(9) and (a)(13) by representing that its Products were on sale, representing that consumers would enjoy "X% off," and displaying a strike-through reference price.

58.     Plaintiff and members of the Class suffered injuries as a result of Defendant's misrepresentations because (a) Plaintiff and members of the Class would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiff and members of the Class paid a price premium due to the mislabeling of Defendant's Products; and (c) Defendant's Products did not have the level of quality or value as promised.

59.     Plaintiff seeks injunctive relief for this violation of the CLRA.

60.     On September 13, 2024, a CLRA demand letter was sent to Defendant's Minnesota and California addresses via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

<u>COUNT II</u>
**Violation of California's False Advertising Law ("FAL")**
**BUS. & PROFS. CODE §§ 17500, *et seq.***

61.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

63.     California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning …

personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

64.     The FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement."  *See* Cal. Bus. & Prof. Code § 17501.

65.     Defendant violated the FAL by representing that its Products were on sale, representing that consumers would enjoy "X% off," and displaying a strike-through reference price.  Before counsel for Plaintiff sent out a demand letter notifying Defendant of its unlawful practices, the Products had not been advertised at their official strike-through price for at least 90 days, but likely for much longer.  After Defendant received Plaintiff's demand letter, the Products are now suddenly advertised at their full retail price online.  Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

66.     Defendant's actions in violation of the FAL were false and misleading such that the general public was likely to be deceived.

67.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class would not have purchased the Products if they had known the true facts regarding the value and prevailing market price of the Products; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality or value.

68.     Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective disclosures to consumers. Plaintiff and members of the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to

Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

**COUNT III**
**Violation of California's Unfair Competition Law ("UCL")**
**BUS. & PROFS. CODE §§ 17200, *et seq.***

69.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

71.     Defendant is subject to the UCL, Bus. & Prof. Code §§ 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for violations.

72.     "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

73.     Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

74.     Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA, FAL, and federal regulations as described herein.

75.     Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by representing that its Products were on sale, representing that consumers would enjoy "X% off," and displaying a strike-through reference price.  Defendant did not sell its Products at the advertised strike-through price until after it received Plaintiff's demand letter.  Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

76.     As detailed above, the CLRA prohibits a business from "[a]dvertising goods or services with intent to not sell them as advertised."  Cal. Civ. Code § 1770(a)(9).

77.     Further, the CLRA prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(13).

78.     California law also expressly prohibits false reference price schemes.  Specifically, the FAL provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

79.     Federal regulations also provide:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

80.     The FTC further provides that:

> [t]he advertiser should be especially careful [...] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.**"

16 C.F.R. § 233.1(b) (emphasis added).

81.     The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.**  Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

82.     As described herein, the alleged acts and practices resulted in violations of federal and state law.

83.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's conduct is unfair in that the harm to Plaintiff and members of the Class arising from Defendant's conduct outweighs the utility, if any, of those practices.

84.     Defendant's practices as described herein are of no benefit to consumers, who are tricked into believing that the Products are of a higher grade, quality, worth, and/or value than they actually are.  Defendant's practice of injecting misinformation into the marketplace about the value of its Products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about their Products.  Taking advantage of that trust, Defendant misrepresents the value of its Products to increase its sales.  Consumers reasonably believe that Defendant is an authority on the value of mattresses and therefore reasonably believe Defendant's representations that its Products are of a higher grade, quality, worth, and/or value than they actually are.

85.     Defendant's conduct described herein violated the "fraudulent" prong of the UCL by representing that the Products were of a higher grade, quality, worth, and/or value, when in fact they were not.

86.     Plaintiff and members of the Class are not sophisticated experts with independent knowledge of the value of mattresses, bedding accessories and furniture, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

87.     Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

88.     As a direct and proximate result of these acts, consumers have been and are being harmed.

89.     Defendant's violations of the UCL entitle Plaintiff and the class members to injunctive relief and full restitution.

90.     Equitable relief is also warranted here as Plaintiff and the general public may lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

91.     Absent injunctive relief, Defendant will continue to injure Plaintiff and class members. Defendant's conduct and omissions of material fact are ongoing.  And, even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence if Defendant evades review.

**COUNT IV**
**Fraud**

92.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

93.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

94.     As discussed above, Defendant failed to disclose material facts about its sales practices, including that its sale prices were the normal prices at which the Products were typically sold, that its strike-through prices were fictitious, and that these deceptive sales practices operated

solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

95.     Defendant's omissions, as described above, upon which Plaintiff and members of the Class reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class to purchase the Products.

96.     Defendant's fraudulent actions caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## COUNT V
### Unjust Enrichment

97.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

98.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

99.     Plaintiff and members of the Class conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

100.    Defendant has knowledge of such benefits.

101.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because it misrepresents that its Products are on sale, representing that consumers would enjoy "X% off," and displaying a strike-through reference price.  These misrepresentations caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts regarding the value of the Products were known.

102.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class Members;

(b) An order declaring Defendant's conduct violates the statutes referenced herein;

(c) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its sales practices and to comply with consumer protection statutes;

(d) Awarding monetary damages, including treble damages;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  September 24, 2024

**BURSOR & FISHER, P.A**.

By: ___/s/ *L. Timothy Fisher*_____
       L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
             lsironski@bursor.com
             jwilner@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

       1.     I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

       2.     The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff alleges that she resides in this District.

       3.     Plaintiff alleges that she is a citizen of California and resident of Bakersfield, California.

       4.     Defendant sold its Products in California and sold a mattress to Plaintiff in this District.

       I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on September 24, 2024, at Walnut Creek, California.

                                        */s/ L. Timothy Fisher*
                                           L. Timothy Fisher